UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES HARRY MADISON,

              Plaintiff,                   Case No. 1:12-cv-1145

v.                                         Honorable Paul L. Maloney

LARRY STELMA et al.,

              Defendants.

                                              /

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Leiber. The Court will serve the complaint against Defendants Stelma, Corizon Medical Inc., and Kent County.

**Discussion**

I.      Factual allegations

Plaintiff is incarcerated at the Kent County Correctional Facility (also known as the "Kent County Jail").  He sues the Sheriff of Kent County, Kent County Sheriff Larry Stelma, Judge Dennis B. Leiber of the Kent County Circuit Court, Corizon Medical Inc., Kent County Corrections, and the Kent County Jail.

According to the complaint, Plaintiff was arrested on June 27, 2012, and taken to the Kent County Jail, where he was placed in a holding cell.  He started feeling chest pains and informed the guard, but the guard ignored him.  Twenty minutes later, the pain increased, so he pounded on the door of his cell and complained, to no avail.  An hour later, the guard let him out of the cell to see a nurse.  Plaintiff told the nurse about his chest pains.  She checked his blood pressure, noted that it was 220/120, and gave him some medicine.  Plaintiff informed her that he has "malignant hypertension," and that he needs to take 0.3 mg of Catapres four times per day, or as needed. (Compl., docket #1, Page ID#3.)  Thus, he needs "24 hour access" to his medicine.  (*Id.*)  The nurse told him "that was against jail policy."  (*Id.*)  Thereafter, Plaintiff received his medicine twice a day, at 8:00 am and 8:00 pm.  His blood pressure averaged around 200/110.

On July 7, 2012, at 7:30 am, Plaintiff was removed from his cell in preparation for transfer to a court proceeding in downtown Grand Rapids.  He informed the guard that he had not yet received his medicine.  The guard told Plaintiff that he would receive it "downstairs."  (*Id.* at Page ID#4.)   However, Plaintiff was taken to the courthouse before he received his medicine. While Plaintiff was at the courthouse, he started having chest pains, so he complained to the guard. The guard told Plaintiff that he would have to wait until he returned to the jail.  Plaintiff did not

return to the jail until 11:00 am, by which time his chest pains had become "severe." (*Id.*) He again

complained to a guard, but he was told that he would have to wait until he returned to his cell.

Plaintiff returned to his cell at 1:00 pm. He then informed Officer P. Greene about

his chest pains. Greene told Plaintiff that he had "called medical" but he had received no response.

(*Id.*) Plaintiff complained to Greene again at 3:00 pm, as Greene was leaving at the end of his shift.

Greene told Plaintiff that he had not received a response from the medical staff. At 3:15 pm, after

the shift change, Plaintiff told Officer Quaakalaar about his chest pain. Quaakalaar called the

medical staff and a nurse came and checked Plaintiff's blood pressure. She determined that it was

300/150, so she called an ambulance and started an EKG. After the ambulance arrived, an

emergency medical technician looked at Plaintiff's chart and the results of the EKG and told his

partner, "They're going to kill this guy." (*Id.* at Page ID##4-5.) Plaintiff stayed at the hospital for

two days. His blood pressure was stabilized and a stress test of his heart "checked out fine." (*Id.*

at Page ID#5.) When Plaintiff returned to the jail, he was placed in the infirmary for three days. His

blood pressure averaged around 200/110 during that time.

On July 20, 2012, at around 1:00 am, Plaintiff started feeling pain in his chest and

dizziness. He got up to use the bathroom and then passed out. When he regained consciousness,

he was surrounded by deputies and his chest and head were in "extreme pain." (*Id.*) Someone

checked his blood pressure and determined that it was "300/something." (*Id.*) A deputy stated, "We

need to get him out of here," but a nurse recommended keeping Plaintiff in his cell and giving him

medicine. (*Id.*) They then helped Plaintiff back into his bed. Plaintiff begged for relief from the

pain, and someone started laughing at him. Suddenly, Plaintiff's mouth filled with blood, so they

decided to move him to the infirmary. In the infirmary, Plaintiff tried to rest but he was still in pain.

Then his heart started "pounding out of control." (*Id.* at Page ID#6.) He pulled the emergency cord and pounded on the door and window of the infirmary cell, but no one responded for twenty minutes. Finally, a nurse arrived and hooked Plaintiff up to an EKG. He told Plaintiff that his heart was "in [r]efib" and then left. (*Id.* at Page ID#6.) Five to ten minutes later, the nurse returned and gave Plaintiff a pill. The nurse also drew some blood and then left, telling Plaintiff that he would check on him in about thirty minutes. An hour later, Plaintiff's heart stopped beating out of control, though it was still in pain.

The next morning, a doctor met with Plaintiff and told him that his blood pressure had been "out of control" since the start of his incarceration, "like a marathon runner running a race everyday 24 [hours] a day for a month with no rest." (*Id.* at Page ID#7.) As a result, Plaintiff had developed congestive heart failure and his kidneys showed signs of damage. The doctor arranged for Plaintiff to take his medicine as it was originally prescribed for him, but "they" followed those instructions for only two days and gave him the wrong medicine for three days. (*Id.*)

Plaintiff asserts that Defendants endangered his life, caused him personal injury, engaged in medical malpractice, and failed to properly medicate him. As relief, Plaintiff seeks damages and access to better medical care.

II.        Immunity (Judge Leiber)

Plaintiff claims that Judge Leiber is liable for Plaintiff's injuries because he sent Plaintiff to jail without bail, thereby preventing Plaintiff from obtaining proper medical treatment. Generally, a judge is absolutely immune from a suit for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free

to act upon his own convictions, without apprehension of person consequences to himself.")
(internal quotations omitted); *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997); *Barnes v.
Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Absolute judicial immunity may be overcome in
only two instances. First, a judge is not immune from liability for non-judicial actions, *i.e.*, actions
not taken in the judge's judicial capacity. *Mireles*, 502 U.S. at 11. Second, a judge is not immune
for actions, though judicial in nature, taken in complete absence of all jurisdiction. *Id.* at 12.

Plaintiff's allegations fail to implicate either of the exceptions to judicial immunity.
There is no doubt that ordering Plaintiff's detention without bail was a judicial act, and there is no
indication that Judge Leiber was acting outside his jurisdiction. Accordingly, Judge Leiber is
absolutely immune from liability. Because Judge Leiber is immune from liability in this case, he
will be dismissed.

III.     Remaining Defendants

A complaint may be dismissed for failure to state a claim if "'it fails to give the
defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.
v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).
While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include
more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory
statements, do not suffice."). The court must determine whether the complaint contains "enough
facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has
facial plausibility when the plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.

Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

Applying the foregoing standards, the Court concludes that dismissal of Plaintiff's action against the remaining Defendants is not warranted at this time. Thus, the Court will order service of the complaint on Defendants Stelma and Corizon Medical Services, Inc. With respect to Kent County Jail and Kent County Corrections, however, the Court will order service on Kent County. The Kent County Jail is a building, not an entity capable of being sued in its own right. *Cf. Travis v. Clinton Cnty. Jail,* No. 1:10-cv-1276, 2011 WL 447000, at *2 (W.D. Mich. Feb. 4, 2011). Moreover, Kent County Corrections is merely an arm of Kent County. Thus, construing Plaintiff's *pro se* complaint liberally, *see Haines*, 404 U.S. at 520, the Court assumes that Plaintiff intended to sue Kent County, the entity responsible for operation of the Kent County Jail.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court

determines that Defendant Dennis B. Leiber will be dismissed pursuant to 28 U.S.C. § 1915(e)(2),

because he is immune from relief.  The Court will allow service of the complaint against Defendants

Stelma, Corizon Medical Inc. and Kent County.

An Order consistent with this Opinion will be entered.


Dated:    January 2, 2013                          /s/ Paul L. Maloney
                                                   Paul L. Maloney
                                                   Chief United States District Judge